# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CIVIL ACTION NO. 4:23-CV-00034-GNS-HBB

KRISTA H.[1]   PLAINTIFF

VS.

MARTIN O'MALLEY, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[2]   DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Krista H. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 18) have filed a Fact and Law Summary. Plaintiff filed a reply brief (DN 19). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

Pursuant to General Order No. 2019-11 and 28 U.S.C. § 636(b)(1)(B), this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations. By Order entered April 27, 2023 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

FINDINGS OF FACT

Plaintiff was previously awarded disability benefits in a prior decision dated June 15, 2012 (Tr. 19). Plaintiff was previously awarded disability for the period of April 1, 2010 through December 31, 2011 (Tr. 19, 113-25). Plaintiff filed her current claim on October 29, 2020, for disability insurance benefits (Tr. 19, 271-80). Plaintiff alleged that she became disabled on August 1, 2017, as a result of spinal stenosis, hypertension, osteoarthritis, degenerative disc-disease, anxiety, and depression (Tr. 19, 127, 153, 295). Plaintiff's application was denied initially on March 9, 2021, and upon reconsideration on July 1, 2021 (Tr. 19, 150, 152). On July 7, 2021, Plaintiff completed a written request for a hearing (Tr. 214-15).

Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a telephonic hearing on February 10, 2022, due to the extraordinary circumstances presented by the COVID-19 Pandemic (Tr. 19, 75). Plaintiff and her non-attorney representative, Kirsten Brown, participated on the call (Id.). William Irvin, an impartial vocational expert, testified during the hearing (Id.). A supplemental telephonic hearing was held on April 27, 2022, due to objections regarding the jobs cited by the vocational expert (Tr. 19, 45). Plaintiff and Brown participated on the call, as did Tina Stambaugh, an impartial vocational expert (Id.).

In a decision dated May 31, 2022, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 19-36). At the first step, the ALJ found Plaintiff met the insured status requirement through December 31, 2022, and that the Plaintiff has not engaged in substantial gainful activity since August 1, 2017, the alleged onset date (Tr. 22). At the second step, the ALJ determined that Plaintiff has the following severe impairments: obesity, neuropathy, degenerative disc disease of the lumbar spine, osteoarthritis, anxiety, and depression (Tr. 22). The ALJ reasoned that Plaintiff's

gastroesophageal reflux disease, ulcers, and diabetes mellitus were non-severe impairments (Tr. 22-23). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"), to perform light work, with the following additional limitations: she can sit for 30 minutes at a time and stand and/or walk for 30 minutes at a time, each for six hours total in an eight-hour workday; she can occasionally push/pull with the lower extremities; she can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can frequently handle and finger with the upper extremities; she can frequently reach overhead and all around with the upper extremities; she can have occasional exposure to concentrated atmospheric conditions as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO); she can have occasional exposure to vibrations and no exposure to moving mechanical parts and unprotected heights; she can understand, remember, and carryout simple instructions; she can use judgment to make simple decisions; she can sustain concentration, persistence, and pace for the completion of simple tasks; she can have frequent interaction with coworkers, supervisors, and the public; she can adjust to occasional changes in a simple work environment (Tr. 25). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 34).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 34-35). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act from August 1, 2017, through the date of the

decision (Tr. 36). Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 268-70). The Appeals Council denied Plaintiff's request for review (Tr. 4-7).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits to persons with disabilities. 42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to the ALJ's Decision

1. Arguments of the Parties

Plaintiff's only argument is that the ALJ committed legal error in her evaluation of Dr. Galloway's opinion as the ALJ's discussion of the supportability and consistency factors failed to meet the regulation's articulation requirements (DN 14-1 PageID # 593-94). Plaintiff contends the ALJ erred in her consistency factor explanation by "ignoring evidence contrary to her conclusion that 'there is nothing' to support Dr. Galloway's opined limitations" while the ALJ also cited to conflicting evidence that makes her reasoning impossible to follow (Id. at PageID # 957). Plaintiff refers to her MRI results to make this contention. Next, Plaintiff agues the supportability factor analysis is inadequate as the ALJ did not mention the entirety of Dr. Galloway's supportive explanation that Plaintiff suffers from numbness, tingling, and chronic back pain (Id. at PageID # 597-98).

Defendant argues the ALJ properly found that Dr. Galloway's treatment notes did not support the extreme limitations he proposed in his opinion and the ALJ's consistency analysis comported with the regulations. To Plaintiff's contention that the ALJ cited both normal and abnormal findings to conclude Galloway's opinion was inconsistent, Defendant asserts the consultive examiner's findings "were generally normal and did not support Dr. Galloway's opinion" (DN 18 PageID # 616). Additionally, Defendant points out that Plaintiff's references to the October 2017 MRI, was evidence that was submitted to the Appeals Council, "and thus not part of the record on review" (Id. at PageID # 614).

In Plaintiff's reply brief, she re-emphasizes that the ALJ's decision should be remanded because the evidence the ALJ cited in her consistency analysis both supports and detracts from Dr. Galloway's opinion, and the ALJ's failure to clarify how she evaluated the evidence was an error

(DN 19 PageID # 622). Additionally, Plaintiff reasserts the ALJ cherry-picked which evidence to evaluate and did not adequately explain her rationale in finding Dr. Galloway's opinion was unpersuasive (Id.).

2. Applicable Law

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 15). *See* 20 C.F.R. § 404.1520c.

The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[3] in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a).[4] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).[5] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and

---

[3] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 404.1513a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 404.1513a(b)(1).

[4] The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

[5] In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

3. Discussion

The ALJ explained why she thought Dr. Galloway's opinion was unpersuasive with:

> Abraham Galloway, M.D., her primary care provider, completed an assessment in September 2021. He opined she had significant and persistent disorganization of motion function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station. Specifically, he stated that she was unable to walk significant distances due to numbness and pain. He opined she had significant reproducible fatigue or motion function with substantial muscle weakness on repetitive activity. He opined that while engaging in occasional standing/walking, she should use a cane or other assistive device. He opined that in an eight-hour day, she could stand/walk for less than two hours and sit for about two hours. He opined she could lift and carry 10 pounds frequently and 20 pounds occasionally. He opined she should never climb, balance, stoop or crawl. He opined she could occasionally crouch and kneel. He opined that about three to four times a day she would need to sit quietly to rest or lie down for about 30 minutes. He opined she would miss more than three days of work per month (Exhibit B11F). This opinion is not persuasive. His opinion regarding her ability to lift and carry is consistent with the evidence. However, the other limitations, which essentially preclude all work activity, are not supported by his findings or consistent with the other evidence of record. Dr. Galloway's treatment notes consistently indicate normal range of motion, muscle tone, coordination, and reflexes. His treatment notes indicate that she is doing well with her medication, without any side effects. His treatment notes do not support the extreme limitations he reported. While the MRI of the lumbar spine revealed some serious abnormalities, there is nothing suggesting limitations as extreme as reported by Dr. Galloway. Physical examination findings from two separate neurosurgeons indicate normal gait, strength and reflexes. In addition, the consultative examination was normal except for straight leg raise test and difficulty with squatting. His assessment is unpersuasive.

(Tr. 32-33). First, the undersigned will address Plaintiff's contention that the ALJ did not sufficiently review the MRI evidence when finding Dr. Galloway's opinion was unpersuasive.[6] Earlier in the decision, the ALJ discussed both the September 2020 and February 2021 MRI results:

> A MRI of the lumbar spine in September 2020 revealed multilevel degenerative changes most prominent at L5-S1 with multilevel spinal canal narrowing most prominent at L5-S1. There was multilevel epidural lipomatosis (Exhibit B1F). Based on the imaging results, the residual functional capacity is reduced to avoid strenuous lifting or carrying, such as medium or heavy exertional work. In addition, she should avoid frequent exposure to vibration and all exposure to hazards, such as moving mechanical parts and unprotected heights.
>
> …
>
> A MRI of the lumbar spine in February 2021 revealed degenerative changes at L4-L5 and L5-S1. There were findings of the prior surgery at L4-L5 level. There was effacement of the bilateral lateral recesses at the L4-L5 level, with direct impingement upon the left L5 nerve root as it enters the lateral recess. There was scarring dorsal to the L5-S1 disc space, which was noted could represent disc fragment or osteophyte. The scarring and fragment caused impingement upon the bilateral lateral recesses as well as the ventral aspect of the canal (Exhibit B10F). Clearly, the imaging reveals abnormalities that would preclude her from performing any strenuous work, such as medium or heavy exertional work. However, the physical examination findings failed to reveal any neurological deficits. Furthermore, her gait was normal. There were no findings suggesting she is unable to perform a reduced range of light work activity as described in the above residual functional capacity.

(Tr. 28, 29). Additionally, the ALJ discussed a neurosurgical consultant who reviewed MRI result:

> It was noted that she "ambulates on a well maintained station and gait." There were no coordination abnormalities, atrophy or dystonia. She had full range of motion in her neck. She had good motion of shoulders, elbows, and wrists. She had normal reflexes, strength and sensation in the bilateral upper and lower extremities, except for mild decreased sensation over the right lateral calf. She had slight decreased range of motion in the lumbar spine. Straight leg raise was negative. Based on the review of the MRI, it was noted that she had degenerative disc disease at L4-L5 and L5-S1 with what appeared to be a fairly prominent central disc herniation at L5-S1, which could be causative for her bilateral leg discomfort.

---

6 The October 2017 MRI "submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 838 (6th Cir. 2016) (quoting Foster v. Halter, 279 F.3d 349, 357 (6th Cir. 2001).

9

> She was advised that she needed to lose weight before she could be a surgical candidate (Exhibit B12F). Once again, the physical examination findings were relatively unremarkable. Her allegation of needing a cane is not supported by the findings, which revealed a well maintained station and gait. However, due to her bilateral leg discomfort, which is consistent with the imaging, in addition to postural limitations, she should avoid frequent pushing/pulling with her lower extremities.

(Tr. 30). Though in her explanation of Dr. Galloway's opinion the ALJ did not explicitly cite which MRI she was referring to, when the decision is read holistically, the ALJ's reasoning is clear as to how the MRI results are not consistent with Dr. Galloway's severe limitations. The ALJ explained that, though both the September 2020 and February 2021 MRI results did contain some abnormal results, both set of results should limit Plaintiff's RFC.[7] By limiting the RFC based on the MRI results, a neurological consultant's review of the MRI, and the physical examination that found Plaintiff's mobility was not as severe as her complaints or Dr. Galloway's limitations, the undersigned finds that the ALJ sufficiently discussed why the medical evidence of the record supported a finding that Dr. Galloway's limitations were inconsistent with the evidence of the record.

Second, to Plaintiff's argument that the ALJ cherry-picked which evidence to address and in finding Dr. Galloway's limitations were unpersuasive, the undersigned concludes this argument is less than persuasive. Plaintiff's argument "implies that the Court should reweigh the evidence and rule in [her] favor. But it is not the Court's role to reweigh the evidence." Ryan v. Comm'r of Soc. Sec., No. 1:23-cv-0130, 2023 U.S. Dist. LEXIS 191679, at *32 (N.D. Ohio Oct. 10, 2023) (citing Rottmann v. Comm'r of Soc. Sec., 817 F. App'x. 192, 196 (6th Cir. 2020)); Cofer v. Comm'r of Soc. Sec., No. 3:23-cv-00045-SKL, 2023 U.S. Dist. LEXIS 218947, at *15 (E.D. Tenn.

---

7 Based on the September 2020 MRI results, the ALJ reasoned that "she should avoid frequent exposure to vibration and all exposure to hazards, such as moving mechanical parts and unprotected heights" (Tr. 28). Based on the February 2021 MRI results, the ALJ reasoned that the results "would preclude her from performing any strenuous work, such as medium or heavy exertional work" (Tr. 29).

10

Dec. 8, 2023). Here, Plaintiff argues that the ALJ erred in her consistency analysis "by ignoring evidence contrary to her conclusion that 'there is nothing' to support Dr. Galloway's opined limitation," citing to a September 2020 physical therapy examination and a March 2021 physical examination (DN 14-1 PageID # 597). However, the ALJ is not required to mention every piece of record evidence in their decision. James D. v. Kijakazi, No. 3:23-CV-00022-CRS-RSE, 2023 U.S. Dist. LEXIS 215134, at *10 (W.D. Ky. Nov. 14, 2023) (citing Simons v. Barnhart, 114 F. App'x 727 (6th Cir. 2004)). Moreover, the ALJ focused on physical examination findings from two separate neurosurgeons—which indicated Plaintiff had a normal gait, strength, and reflex—and a consultative examination finding—which was normal except for a straight leg raise test and note that Plaintiff had difficulty squatting (Tr. 29, 33).

Third, to the ALJ's supportability analysis, the undersigned finds that the ALJ complied with the regulations by explaining that the findings in Dr. Galloway's own treatment notes do not support the extreme limitations he expressed in his opinion (Tr. 32). Additionally, the undersigned notes that Dr. Galloway's proposed limitations are only based on a check-box form that does not include an explanation why Dr. Galloway found those restrictions applicable (Tr. 518). Sixth Circuit courts have held that these check-box type of opinions are unpersuasive. Keeton v. Comm'r of Soc. Sec., 583 F. App'x. 515, 525 (6th Cir.2014) (quoting SSR 96–2p, at *1, which states that "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion"); *see also* Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The ALJ's reasoning is clear that based on Dr. Galloway's treatment notes— which the ALJ highlighted that the notes indicated Plaintiff was doing well with her medication, had a normal range of muscle tone, coordination, and reflexes—his opined limitations were not

11

supported (Tr. 33). The ALJ's decision is supported by substantial evidence, and a remand of the decision would be inappropriate.

## Conclusion

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. Id. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law. As such, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

January 18, 2024

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed, or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140 (1985).

January 18, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel of Record